UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

BANK OF LINCOLN COUNTY,            )
                                    )
    Plaintiff / Counter-Defendant,  )
                                    )
v.                                  )    No. 4:10-cv-19
                                    )    *Lee*
GE COMMERCIAL DISTRIBUTION          )
FINANCE CORPORATION,                )
                                    )
    Defendant / Counter-Plaintiff.  )

## MEMORANDUM AND ORDER

The parties to this lien priority case have asked the Court to declare who has the better interest in the remaining inventory of a now-defunct business. Before the Court is the motion of Defendant / Counter-Plaintiff GE Commercial Distribution Finance Corporation ("Defendant" or "CDF") for summary judgment [Doc. 14]. Both CDF and Plaintiff Bank of Lincoln County ("Plaintiff" or "BLC") have asserted security interests in used horse trailers purchased by Jeff Tunstill d/b/a Cars Unlimited ("Tunstill"). At issue are whether CDF's first-filed and perfected security interest was intended to embrace the disputed inventory, and if so, whether that interest takes priority over BLC's purchase-money security interest. For the reasons below, the Court **CONCLUDES**, even taking the facts in the light most favorable to BLC, that both questions must be answered in favor of CDF. Defendant's motion for summary judgment [Doc. 14] will therefore be **GRANTED IN PART**. Plaintiff's unopposed motion for an extension of time within which to submit pretrial disclosures [Doc. 25] also will be **GRANTED**.

I.     BACKGROUND

In 1999, CDF[1] loaned Tunstill the money to establish a business selling horse trailers [Doc. 3 at ¶¶ 30, 25, 41; Doc. 10 at ¶¶ 4, 7, 23].[2]  In return, Tunstill pledged his inventory, both then-existing and after-acquired, as collateral [Doc. 3-1 at ¶ 3].  CDF perfected its interest by filing the financing statement, then later filing continuation statements and amendments, with the Tennessee Secretary of State [Doc. 3 at ¶ 23; Doc. 3-4; Doc. 10 at ¶ 5; Doc. 21 at 2].[3]  With CDF's financing, Tunstill purchased horse trailers and related products for his business [Doc. 3 at ¶ 25; Doc. 10 at ¶ 7].

Unknown to CDF, BLC subsequently advanced additional funds to Tunstill for the purchase of used horse trailers [Doc. 3 at ¶¶ 26-27; Doc. 10 at ¶¶ 8-9; Doc. 21-3 at ¶ 2; Doc. 22 at ¶ 3].  To secure the debt, BLC took a purchase-money security interest in those used horse trailers and perfected its interest by filing its financing agreement with the Tennessee Secretary of State [Doc. 1-1 at ¶ 8; Doc. 22 at ¶ 3].  BLC did not, however, notify CDF that it had taken any such interest [Doc. 3 at ¶ 28; Doc. 21 at 3].  Nor did BLC obtain a subordination agreement from CDF [Doc. 3 at ¶ 28; Doc. 10 at ¶ 10].

In January 2009, CDF gave written notice to Tunstill that he was in default [Doc. 3 at ¶ 30;

---

[1] According to Defendant, CDF was then known as Deutsche Financial Services Corporation, but later changed its name to GE Commercial Distribution Finance Corporation. It later merged with Transamerica Commercial Finance Corporation, and although Transamerica was the surviving entity, Transamerica changed its name to GE Commercial Distribution Finance Corporation. [Doc. 3 at 5, n.1].  Plaintiff does not contend that Defendant is not the proper entity to assert its claimed interest.

[2] Defendant's counterclaim contains two paragraphs numbered 30.  This citation refers to the first of them, at page 5.

[3] BLC does not dispute that CDF's interest had attached and was perfected by the filing of the security agreement pursuant to Tenn. Code Ann. §§ 47-9-203 [Doc. 21 at 2].

Doc. 3-6; Doc. 10 at ¶ 12]. If the default was not cured, CDF warned, the collateral would be repossessed [Doc. 3-6]. Tunstill acknowledged his default in April 2009, and he voluntarily surrendered certain trailers to CDF [Doc. 21-2; Doc. 22 at ¶ 4]. CDF took possession of those trailers in May 2009 [Doc. 22 at ¶ 4]. Some of the voluntarily-surrendered trailers were new and some were used trade-ins, but none were subject to BLC's purchase-money security interest [Doc. 22 at ¶ 4]. CDF did not repossess any of the trailers financed by BLC's purchase money at that time [Doc. 22 at ¶ 4]. BLC propounded an interrogatory to CDF asking why, if it claimed an interest in those trailers, it did not repossess them along with the others [Doc. 22 at ¶ 5]. CDF answered:

> [CDF] repossessed the available collateral in it [sic] normal course and [CDF] has repeatedly tried to take possession of the used units and is willing and able to do so at this time but it has been unlawfully restrained from doing so by [BLC] as [BLC] maintains control over the property at which the inventory is situated.

[Doc. 21-3 at ¶ 6]. In May 2009, however, Tunstill maintained control over the real property where the trailers were located, and no agent of BLC was present when CDF repossessed the other trailers [Doc. 22 at ¶¶ 4-5].[4]

In November 2009, Tunstill filed for bankruptcy [Doc. 3 at ¶ 31; Doc. 10 at 13]. The automatic stay was lifted in January 2010, and this suit was filed the following month [Doc. 1-1 at 1-7; Doc. 3-7].

## II. ANALYSIS

Each party to this case is seeking a declaratory judgment that it has the superior interest in the used horse trailers financed by BLC's purchase money (the "disputed inventory"). CDF argues

---

[4] BLC has now foreclosed on the real property and has taken measures to protect the remaining inventory [Doc. 22 at ¶ 6].

3

that BLC's interest cannot take priority because BLC did notify CDF of its purchase-money security interest. In response, BLC raises two main arguments. First, BLC argues that CDF did not intend to take a security interest in used trailers, but only new trailers. BLC contends that CDF's course of dealing proves its intentions in hindsight. Second, BLC argues that CDF waived its interest in the disputed inventory when it repossessed some inventory but not the disputed inventory.

### A. Standard of Review

As a matter of procedural law, Fed. R. Civ. P. 56 provides the standard for summary judgment in a diversity case. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law, state law in a diversity case, provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248; *Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id. at 249*. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907.

In ruling on a motion for summary judgment, the court may consider any affidavits along

with any pleadings, depositions, answers to interrogatories, or admissions. *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 450 (6th Cir. 2005). The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries this burden, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rely solely on the allegations in its pleadings. Fed. R. Civ. P. 56(e). In other words, the non-moving party must present some significant, probative evidence indicating the necessity of a trial to resolve a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). If the non-moving party fails to show a genuine dispute with respect to material facts regarding any element essential to its claim, and on which it bears the burden of proof, then the moving party is entitled to judgment as a matter of law and summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

  **B.**  **Breadth of CDF's Security Interest**

  As noted above, CDF took the first broad security interest in Tunstill's inventory. The financing agreement provides, in relevant part: "To secure payment of all of Dealer's [Tunstill's] current and future debts to DFS [now CDF], . . . Dealer grants DFS a security interest in all of Dealer's inventory . . . whether now owned or hereafter acquired, . . . and all proceeds thereof." [Doc. 3-1 at ¶ 3]. This language unambiguously covers all later-acquired inventory, without regard to its status as used or new. *See* Tenn. Code Ann. §§ 47-9-201(a) (providing that "a security agreement is effective according to its terms between the parties . . . and against creditors."); 47-9-204 (permitting "after-acquired" inventory clauses); 47-9-108, -504 (providing that a financing statement is sufficient when it identifies the collateral by type–e.g., "inventory"). BLC argues that

5

notwithstanding this broad language, CDF's "evident intent, as the course of dealing showed, [was] to perfect [its] security interest . . . as to only the new . . . trailers . . . ." [Doc. 21 at 2].

A "course of dealing" is "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Tenn. Code Ann. § 47-1-303(b). BLC argues that whenever new trailers were sold, the proceeds were paid to CDF, and whenever used trailers were sold, the proceeds were paid to BLC. BLC has not, however, pointed to any evidence of this practice, and even if proven, those facts would not be sufficient to modify the terms of the security agreement. Tennessee courts have held in similar circumstances that the unilateral actions of a debtor cannot prove a course of dealing, even when the secured creditor accepts the proceeds of the debtor's sales. *See Dyersburg Production Credit Ass'n v. Kile*, 1986 WL 1874, at *4 (Tenn. Ct. App. 1986); *First Tenn. Production Credit Ass'n v. Gold Kist*, 653 S.W.2d 418, 421 (Tenn. Ct. App. 1983).

BLC has not argued that the alleged "course of dealing" here was anything but unilateral. Under the financing agreement, Tunstill was entitled to sell inventory in the ordinary course of his business without CDF's prior consent [Doc. 3-1 at ¶ 5]. Therefore, as CDF points out, so long as Tunstill was not in default, CDF had no reason to be concerned with which trailers generated the proceeds it received. Indeed, it is not clear that CDF would have even had the *right* under the financing agreement to object to Tunstill's use of the proceeds. Tunstill covenanted to pay CDF according to a schedule of repayment or, if a particular item of inventory was financed on "Pay-As-Sold" terms, whenever that item was sold [Doc. 3-1 at ¶ 9]. Thus, CDF could have objected to Tunstill's failure to pay CDF the proceeds from the disputed inventory only if it was financed by

CDF on "Pay-As-Sold" terms, but BLC argues, to the contrary, that the disputed inventory was financed by BLC's purchase money.

Consequently, the Court **CONCLUDES** that the financing agreement did embrace all after-acquired inventory, whether new or used, and that the terms of that agreement were not altered by the parties' course of dealing.

**C.    Priority**

The Court's conclusion that CDF had a security interest in the disputed inventory, however, does not end the inquiry, because BLC, too, took a security interest in the disputed inventory. As both parties acknowledge, the issue is one of priority. Generally, as between two perfected security interests, the first to file or perfect has first priority in the collateral. [Tenn. Code Ann. § 47-9-322(a)(1)](); [*Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n*, 826 F.2d 434, 437 (6th Cir. 1987)](). An exception, however, exists for purchase-money security interests.

> "[A] perfected purchase-money security interest in inventory has priority over a conflicting security interest in the same inventory . . . if:
>
> (1)   the purchase-money security interest is perfected when the debtor receives possession of the inventory;
>
> (2)   the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;
>
> (3)   the holder of the conflicting security interest receives the notification within five (5) years before the debtor receives possession of the inventory; and
>
> (4)   the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory.

[Tenn. Code Ann. § 47-9-324(b)](). Notably, three of these four requirements relate to the authenticated

notification, and BLC concedes there is no evidence that such notice was ever given to CDF.

Nevertheless, BLC argues that CDF relinquished its priority in the collateral. BLC cites *Stone Fort Nat'l Bank of Nacogdoches v. Citizens State Bank of Corrigan*, 722 S.W.2d 508, 510 (Tex. App. 1986), for the proposition that the owner of a technically superior security interest may waive its priority by "intentional relinquishment of a known right or such conduct as warrants an inference of such relinquishment of the right." Although the Tennessee courts do not appear to have addressed the issue, it is not necessary for this Court to guess whether they would adopt a similar rule, because CDF's conduct does not warrant an inference that CDF intentionally relinquished its rights.

BLC argues that in May 2009, when CDF repossessed the new and trade-in trailers, CDF knew of its right to repossess the disputed inventory but failed to do so. BLC further contends that CDF's interrogatory answer—that it was prevented by BLC from taking the disputed inventory—is misleading because BLC did not have control of the property where the inventory was located in May 2009. BLC's argument has some superficial appeal; if CDF offered a false reason for failing to repossess the disputed inventory, it might at least create a triable issue of fact regarding whether CDF waived its interest in that inventory as against BLC. The argument, however, mischaracterizes CDF's answer. CDF stated that it "repossessed the available collateral in it[s] normal course and . . . has repeatedly tried to take possession of the used units . . . but . . . has been unlawfully restrained from doing so . . . ." BLC has not provided any evidence tending to show that CDF's answer was false—i.e., that it deviated from its "normal course" in repossessing the new trailers first. To survive a motion for summary judgment, the non-moving party "must put forth more than speculations or intuitions," *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007)

(citing *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002)), and without evidence of falsity, CDF's answer is not implausible on its face.[5]

Accordingly, the Court **CONCLUDES** that CDF has priority in the disputed inventory. Pursuant to Tenn. Code Ann. §§ 47-9-609, -610, and -615, CDF may take possession of the collateral for disposition in a commercially reasonable sale.

### D. Balance of Deficiency

In the alternative, BLC argues there is a genuine issue of material fact with respect to the amount of Tunstill's remaining indebtedness to CDF. BLC argues that if the proceeds of the disputed inventory exceed the indebtedness, BLC will be entitled to a marshaling of assets. While the record may not show what balance remains on the note, there is no dispute that CDF remains a secured creditor [Doc. 3-7]. A secured creditor with priority may enforce its lien through a commercially reasonable execution sale, but must pay over any surplus to the owner of a subordinate security interest. Tenn. Code Ann. §§ 47-9-610 and -615. Any challenge to the commercial reasonableness of such a sale is not yet ripe.

### E. Attorney's Fees

In CDF's counterclaim and motion for summary judgment, CDF seeks reasonable attorney's fees incurred in this action. Under the American rule, each party bears its own costs of litigation unless shifting is provided for by agreement or by statute. *Bossier Bank & Trust Co. v. Union Planters Nat'l Bank of Memphis*, 550 F.2d 1077, 1083 (6th Cir. 1977). CDF cites no authority authorizing a deviation from this rule. Tennessee's version of the Uniform Commercial Code does

---

[5] As explained below, BLC argues that the value of the disputed inventory exceeds the value of Tunstill's remaining debt to CDF. If CDF was in fact over-secured, a decision to repossess and dispose of the most saleable collateral first would be entirely reasonable.

9

allow the proceeds of a sale of collateral to be applied to the secured creditor's attorney's fees, but it does not provide for shifting those costs to another secured party. *See* Tenn. Code Ann. § 47-9-615(a)(1). However, since the parties essentially ignored the attorney's fees issue in the summary judgment pleadings, providing neither legal authority nor evidentiary support, the Court makes no ruling at this time.

### III. CONCLUSION

Accordingly, CDF's motion for summary [Doc. 14] is **GRANTED IN PART**, to wit: (1) the Court **DECLARES** that CDF has priority in the disputed inventory; and (2) Plaintiff's claims for declaratory judgment and marshaling of assets are **DISMISSED WITH PREJUDICE**. Plaintiff's unopposed motion for an extension of time within which to submit pretrial disclosures [Doc. 25] is **GRANTED**.

A judgment will enter after the Court determines the issue of liability, if any, for attorney's fees. If the parties are unable tor resolve the remaining issue of attorney's fees, they shall be prepared to address the issue at the trial and final pretrial conference in light of this order.[6]

SO ORDERED.

ENTER:

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] This document contains hyperlinks to other documents. Such links are provided for the user's convenience only, and the Court does not guarantee their functionality or accuracy. Any link which directs the user to a document other than the document cited in the text will not supersede the textual citation. The Court does not endorse the provider of or content of any document maintained by any other public or private organization.